```
                    UNITED STATES DISTRICT COURT

                   EASTERN DISTRICT OF CALIFORNIA


PAC-WEST TELECOMM, INC.,         )    1:10-cv-1051 OWW GSA
                                 )
            Plaintiff,           )    AMENDED SCHEDULING
                                 )    CONFERENCE ORDER
     v.                          )
                                 )    Mid-Discovery Status
MCI COMMUNICATIONS SERVICES,     )    Reports Due:   2/14/11
INC. d/b/a VERIZON BUSINESS      )
SERVICES,                        )    Mid-Discovery Hearing:
                                 )    2/25/11 8:15 Ctrm. 3
            Defendant.           )
                                 )    Discovery Cut-Off: 4/11/11
_____)
                                      Non-Dispositive Motion
                                      Filing Deadline: 7/20/11

                                      Non-Dispositive Motion
                                      Hearing Date:  8/26/11 9:00
                                      Ctrm. 10

                                      Dispositive Motion Filing
                                      Deadline: 8/1/11

                                      Dispositive Motion Hearing
                                      Date: 9/26/11 10:00 Ctrm. 3

                                      Settlement Conference Date:
                                      7/5/11 10:00 Ctrm. 10

                                      Pre-Trial Conference Date:
                                      10/31/11 11:00 Ctrm. 3

                                      Trial Date: 12/13/11 9:00
                                      Ctrm. 3 (CT-3 days)
```

I.   Date of Scheduling Conference.

1  October 7, 2010.
2  II.  Appearances Of Counsel.
3  Arent Fox LLP by Joseph P. Bowser, Esq., appeared on behalf
4  of Plaintiff.
5  Kellogg Huber Hansen Todd Evans and Figel, P.L.L.C., by
6  Scott H. Angstreich, Esq., and Andrew M. Hetherington, Esq.,
7  appeared on behalf of Defendant MCI Communications Services, Inc.
8  d/b/a Verizon Business Services.
9  Tobin Law Group by August O. Stofferahn, Esq., also appeared
10 on behalf of Plaintiff Pac-West Telecomm, Inc.
11 III.  Summary of Pleadings.
12  1.  Pac-West filed its complaint in response to Verizon's
13 unlawful refusal to pay Pac-West for the work Pac-West has
14 performed and continues to perform as an input to Verizon's
15 provision of long-distance calling services to Verizon's
16 customers.
17  2.  Both parties are telecommunications carriers.  By way
18 of background, there are two types of telecommunications carriers
19 at issue in this case: local exchange carriers ("LECs") and
20 interexchange carriers ("IXCs"), also known as long-distance
21 carriers.  Under both federal and state regulations, IXCs are
22 required to pay LECs' "access charges" for the input access
23 services the LECs provide in carrying the calls that enable an
24 IXC to offer its for-profit long-distance service.  These access
25 charges are set forth in regulated price lists, known as tariffs,
26 filed with the Federal Communications Commission ("FCC") and
27 state public service commissions.  The FCC has jurisdiction over
28 telecommunications traffic between calling and called parties in

different states, while state public service commissions have jurisdiction over telecommunications traffic between callers in the same state.

3. Plaintiff is a certificated local exchange carrier and has tariffs on file with the FCC and the public service commissions in the States of Arizona, California, Colorado, Idaho, Nevada, Oregon, Texas, Utah, and Washington.  These tariffs describe the rates, terms, and conditions under which Pac-West provides its access services to IXCs, Verizon included. Pac-West has provided Verison the tariffed services for which it has billed Verizon.  But Verizon now refuses to pay Pac-West's lawfully assessed access charges for the work Plaintiff performs for Verizon's benefit.  Prior to June 2009, Verizon paid Pac-West's invoices at Pac-West's tariffed rates, but after June 2009 Verizon ceased paying for the services it takes from Pac-West. Verizon has no basis for withholding any of Pac-West's charges. Pac-West therefore seeks an order compelling Verizon to pay the amounts it has withheld from Pac-West since June 2009 and to pay Pac-West's invoices going forward.

4. Verizon Business seeks relief from Pac-West's persistent billing and past collection of unlawful charges allegedly authorized by its federal and state tariffs.  Since at least August 2008, Pac-West has sent Verizon Business monthly invoices that included charges that Verizon Business did not owe and that Pac-West was not entitled to collect.

5. In the course of its operations, Verizon Business has carried interstate and intrastate long-distance calls that routed through Pac-West's network, either because those calls are

1  destined to (or were originated by) customers who purchased local
2  telephone service from Pac-West or because Pac-West entered into
3  an arrangement with another company (often a wireless carrier or
4  a Voice over Internet Protocol ("VoIP") provider) pursuant to
5  which long-distance calls to (or by) that company's customers
6  (who are not themselves customers of Pac-West) are routed through
7  Pac-West's network.
8       6.   Pac-West has submitted invoices to Verizon Business for
9  tariffed services that Pac-West claims to have provided to
10 Verizon Business in the course of handling those long-distance
11 calls.  Those invoices contain errors that make it impossible for
12 Verizon Business to validate the charges therein, and include
13 millions of dollars of charges that Verizon Business does not
14 owe, including (a) charges for services that Pac-West did not in
15 fact provide, (b) charges that were not authorized by any valid
16 federal or state tariff, and (c) charges that exceed the maximum
17 rates permitted to be imposed by tariff under applicable federal
18 law.
19      7.   Before becoming aware of the numerous defects and
20 improprieties in Pac-West's invoices, Verizon Business paid Pac-
21 West substantial amounts of money that it did not owe.  Verizon
22 Business now seeks to recover that money and to obtain
23 declaratory relief to compel Pac-West to cease its unlawful
24 practices.
25 IV.  Orders Re Amendments To Pleadings.
26      1.   The Complaint has been amended to designate the correct
27 Defendant entity, MCI Communications Services, Inc. d/b/a Verizon
28 Business Services, the real Defendant-party in interest.  The

parties do not currently contemplate the need for amending the pleadings.

V.   Factual Summary.

   A.   Admitted Facts Which Are Deemed Proven Without Further Proceedings.

      1.   Plaintiff, Pac-West Telecomm, Inc. is a corporation incorporated under the laws of the State of California that operates as a competitive local exchange carrier ("CLEC") that operates primarily in Arizona, California, Colorado, Idaho, Nevada, Oregon, Texas, Utah and Washington.

      2.   Defendant, MCI Communications Services, Inc. d/b/a Verizon Business Services, is a corporation incorporated under the laws of the State of Delaware that operates as an interexchange carrier that provides interstate and intrastate interexchange service throughout the United States.

      3.   Commencing in July 2009, Defendant disputes Plaintiff's current and past invoices and has withheld payments of disputed amounts invoiced from June 2009 through the present.

   B.   Contested Facts.

      1.   Pac-West submits that its invoices to Verizon accurately reflect the tariffed services it provides to Verizon, and have always done so.  As an accommodation to Verizon, Pac-West has agreed to reformat and make other cosmetic changes to its invoices at Verizon's request to enable Verizon to (re)verify that Pac-West is indeed providing Verizon the services for which it bills Verizon.  By these actions, however, Pac-West does not admit that its invoices, as previously formatted, were in any way deficient or did not provide Verizon with sufficient information

to calculate the charges owed to Pac-West for the services Pac-West has performed for Verizon pursuant to the terms and conditions of Pac-West's tariffs.

  2. The nature of the telecommunications traffic for which Pac-West has billed Verizon.

  3. The amount of the traffic for which Pac-West has billed Verizon that is jurisdictionally interstate and intrastate.

  4. The amount of the traffic for which Pac-West has billed Verizon that is originated by or delivered to customers of wireless carriers.

  5. The amount of the traffic for which Pac-West has billed Verizon that is originated by or delivered to customers of Voice over Internet Protocol ("VoIP") providers.

  6. Whether the entities to (or from) which Pac-West delivered (or received) the traffic for which it billed Verizon are *bona fide* end-user customers of Pac-West.

  7. The facilities Pac-West uses in carrying the traffic for which it billed Verizon.

  8. The number of minutes of traffic for which Pac-West billed Verizon that Pac-West actually routed over its CLEC network.

  9. The central offices used by Pac-West or other carriers to switch the traffic for which Pac-West billed Verizon.

VI. Legal Issues.

 A. Uncontested.

  1. Jurisdiction exists under 28 U.S.C. § 1331 and 47 U.S.C. §§ 151, et seq.  Jurisdiction is also invoked under 28

1  U.S.C. § 1367.

2          2.   Venue is proper under 28 U.S.C. § 1391.

3          3.   The parties agree that for supplemental claims where applicable tariffs apply, the substantive law of the State of Arizona, California, Colorado, Idaho, Nevada, Oregon, Texas, Utah and Washington will provide the rule of decision.

4          4.   The parties are regulated telecommunications carriers.  As regulated telecommunications carriers, the parties are subject to the Communications Act of 1934, 47 U.S.C. §§ 151, et seq., as amended by the Telecommunications Act of 1996.  CLECs such as Plaintiff are generally required or permitted to file access service tariffs with the FCC and state public service commissions to set forth the rates, terms and conditions of the access services CLECs provide to IXCs.

5          5.   The FCC and state public service commissions have jurisdiction over the access charges that apply to any given interexchange call, depending upon whether the call is interstate (FCC) or intrastate (state public service commission).  With regard to access services provided to IXCs for interstate traffic, in 2001, the FCC issued its *CLEC Access Charge Order I*, in which it modified its existing access charge rules to regulate CLEC access rates by more closely aligning CLEC access rates with those of the ILECs.  The FCC established a "benchmark" or "safe harbor" at or under which CLEC access rates are presumed just and reasonable as a matter of law.  Under the FCC's regulations, the benchmark declined over a three-year period until it reached the competing ILEC's rate.  CLECs need not, however, mirror the ILECs' rate structures.  In two subsequent orders issued in 2004

and 2008 - the *CLEC Access Charge Order II and III* - the FCC amended and clarified its "benchmark" rules.

6.   This Court has jurisdiction over the claims asserted in Pac-West's First Amended Complaint and over the counterclaims asserted in Verizon's Answer to Complaint and Counterclaims.

B.   Contested.

1.   Verizon has asserted various legal arguments to excuse its unlawful refusal to pay Pac-West's tariffed access charges as invoiced.  Verizon's first argument is that Pac-West's tariffs are void because they contain cross-references to other carriers' tariffs.  Pac-West submits that Verizon's argument in this regard is without merit, as it ignores the applicable FCC tariffing regulations for non-dominant carriers that expressly permit carriers like Pac-West to cross-reference dominant carriers' tariffs, and further ignores controlling precedent holding that Verizon does not have a private right of action to seek relief from this Court based on the (inapposite) tariffing regulations on which Verizon relies.  In any case, Pac-West's tariffs, and the rates, terms and conditions contained in those tariffs, comply with all applicable federal and state regulations.

2.   Verizon further asserts that Plaintiff is not properly jurisdictionalizing the traffic that Pac-West carries for Defendant, and as a result Pac-West is purportedly applying one of Pac-West's intrastate tariffs when Plaintiff's interstate tariff allegedly should apply.  Pac-West, however, disputes

Verizon's submitted Percentage Interstate Usage[1] ("PIU") factor because it is not based on data from its actual call flows, but rather on Verizons' erroneous legal conclusions concerning various "sub-categories" of traffic and/or the protocol in which a particular call is generated or received by the applicable caller.  Foremost among Defendant's mistaken arguments is that all traffic carried by Pac-West that is transmitted in Voice-over-Internet Protocol ("VoIP") is jurisdictionally interstate, even if the beginning and end points of the call are within the same state.  No FCC order or regulation, however, supports Verizon's position that a LEC cannot assess originating or terminating switched access charges for such VoIP traffic pursuant to a LEC's intrastate access tariff.  On the contrary, Pac-West's position is that VoIP traffic is compensable under its federal or intrastate tariffs, depending on the end points of the particular call, just as a call placed in the traditional time division multiplexing ("TDM") protocol would be.

    3.   Verizon further objects to other artificial subcategories of traffic that Pac-West handles on behalf of Verizon, such as toll-free traffic that is initiated by wireless carriers' customers.  But much like Verizon's arguments

---

[1] It is a common practice in the telecommunications industry that in lieu of submitting call detail records that measure with certainty the beginning and end points for each call - which will thus enable an accurate determination of the jurisdiction of each call, but which is extremely costly to do - carriers instead submit a PIU as a good faith approximation of the jurisdictional breakdown or traffic.  As an example, if a carrier submits a PIU of 60, 60% of the traffic will be billed at the interstate rate, while 40% will be billed at the intrastate rate.

concerning VoIP traffic, Verizon relies upon distinctions without a difference in terms of whether a particular subset of telecommunications traffic is compensable under Pac-West's applicable tariff.

4.  Verizon, moreover, has refused to abide by the dispute-resolution provisions of Pac-West's tariffs.  For example, Pac-West's California intrastate access tariff requires a carrier-customer to dispute any charges billed pursuant to that tariff within ninety days, which Verizon failed to do.

5.  Equally irrelevant is Verizon's characterization of Pac-West's commercial relationships with some of its customers.  Verizon asserts that Pac-West treats certain of its customers, such as VoIP providers, as business partners rather than as bona fide customers, which, according to Verizon, disqualifies these entities as "end-users" under Pac-West's tariffs.  Pac-West's contracts with these customers, however, comply with federal and state regulations, and in no way alter or affect the access services that Pac-West provides to Verizon.  This is but another example of Verizon attempting to obfuscate the simple fact that Pac-West has provided, and continues to provide, Verizon with the switched access services, as defined in Plaintiff's tariffs, that enable Verizon to provide its for-profit long-distance services, and that Verizon is improperly trying to co-opt those services without due compensation.

6.  The rates, terms, and conditions contained within Pac-West's federal and state tariffs for interstate and intrastate switched access services Pac-West provided to IXCs pursuant to those tariffs during the periods for which Pac-West

is seeking to collect amounts allegedly due from Verizon.

       7.   Whether Pac-West's federal and state tariffs were void *ab initio* or otherwise invalid.

       8.   Whether the terms of Pac-West's tariffs were consistent with applicable federal and state regulations.

       9.   Whether Pac-West's interstate tariffed access charge rates exceeded the rates permitted to be tariffed under the FCC's benchmark rules.

       10.   Whether Pac-West's invoiced charges to Verizon were consistent with the terms of its tariffs.

       11.   Whether the services described in its federal and state tariffs for which Pac-West invoiced Verizon are the services Pac-West provided to Verizon.

       12.   Whether, if the entities to (or from) which Pac-West delivered (or received) the traffic for which it billed Verizon were not *bona fide* end-user customers of Pac-West, Pac-West was entitled to bill Verizon pursuant to the terms of its federal and state access charge tariffs for traffic Pac-West delivered to (or received from) those customers.

       13.   Whether, if Pac-West billed Verizon for minutes of traffic that Pac-West did not route over its CLEC network, Pac-West is entitled to recover the amounts it billed for that traffic.

       14.   Whether Pac-West complied with the applicable provisions of its federal and state tariffs regarding the use of a Percentage Interstate Usage factor to invoice Verizon.

       15.   Whether Pac-West would be unjustly enriched by retaining amounts it has received from Verizon to which it was

not entitled.

  16. Damages for any issue on which a party is held liable.

  17. Attorneys' fees that either party is entitled to recover, if any.

VII. Consent to Magistrate Judge Jurisdiction.

 1. The parties have not consented to transfer the case to the Magistrate Judge for all purposes, including trial.

VIII. Corporate Identification Statement.

 1. Any nongovernmental corporate party to any action in this court shall file a statement identifying all its parent corporations and listing any entity that owns 10% or more of the party's equity securities.  A party shall file the statement with its initial pleading filed in this court and shall supplement the statement within a reasonable time of any change in the information.

IX. Discovery Plan and Cut-Off Date.

 A. Discovery Relating to Electronic, Digital, and/or Magnetic Data.

  1. Notification of Intent to Seek Electronically Stored Information.

   a. Each party expressed its intent to seek electronically stored information, as well as to identify the categories of such information.

   b. Plaintiff intends to seek the following categories of electronically stored information:

    i. Electronically stored documents and information, as defined in Fed. R. Civ. P. 34(a)(1)(A),

12

1  including, without limitation, e-mails, word processing
2  documents, spreadsheets, databases and PDFs;
3                      ii.   Exchange Message Interface ("EMI")
4  records, Call Detail Records ("CDRs"), and any electronically
5  stored documents, data, or information derived from such records;
6                      iii. Electronically stored data or other
7  information used in the course of calculating or creating
8  invoices;
9                      iv.   Electronically stored data or other
10 information used in the course of calculating or creating
11 invoices;
12                     v.    Electronically stored financial and
13 accounting data or other information relevant to the revenues and
14 profits Verizon earns for the traffic at issue in this case;
15                     vi.   Electronically stored financial and
16 accounting data or other information relevant to the rates paid
17 by Verizon to other carriers for services comparable to those
18 Pac-West provides to Verizon.
19           c.    Defendant intends to seek the following
20 categories of electronically stored information:
21                     i.    Electronically stored documents and
22 information, as defined in Fed. R. Civ. P. 34(a)(1)(A), including
23 without limitation, emails, word processing documents,
24 spreadsheets, databases, and PDFs;
25                     ii.   Exchange Message Interface ("EMI")
26 records, Call Detail Records ("CDRs"), and any electronically
27 stored documents, data, or information derived from such records;
28                     iii. Electronically stored data or other

13

information used in the course of calculating or creating invoices;

     iv.  Electronically stored financial and accounting data or other information relevant to the damages claimed by Pac-West in this litigation.

  2. Conferral Regarding Electronically Stored Information.

    a. Computer-based information.

     i. The parties have conferred and represented to each other that litigation hold notices have been sent to the appropriate officers and employees within their respective organizations, which the parties have agreed will be sufficient to avoid accusations of spoliation.

     ii. E-mail information:  The parties have conferred regarding e-mail relevant to claims and defenses at issue in this litigation and have agreed to work together to develop mutually agreeable search terms to capture such information.

     iii. Deleted information:  The parties do not anticipate the need to restore deleted information, except for information that is readily accessible, such as from a "Recycle Bin," "Deleted Items" folder, or comparable location on a user's computer.

     iv. Back-up data:  The parties do not anticipate the need for discovery of any back-up data.

B. The Court orders:

  1. The parties have exchanged their Rule 26(a)(1) initial disclosures.

14

 2.     The parties are ordered to file mid-discovery status reports on or before February 14, 2011.

 3.     February <u>25</u>, 2011 at 8:15 a.m. in Courtroom 3 is the date scheduled for a mid-discovery status conference. The parties are authorized to appear telephonically.

 4.     The parties are ordered to complete all non-expert discovery on or before April 11, 2011.

 5.     The parties are directed to disclose all expert witnesses, in writing, on or before May 9, 2011. Any rebuttal or supplemental expert disclosures will be made on or before June 6, 2011. The parties will comply with the provisions of Federal Rule of Civil Procedure 26(a)(2) regarding their expert designations. Local Rule 16-240(a) notwithstanding, the written designation of experts shall be made pursuant to F. R. Civ. P. Rule 26(a)(2), (A) and (B) and shall include all information required thereunder. Failure to designate experts in compliance with this order may result in the Court excluding the testimony or other evidence offered through such experts that are not disclosed pursuant to this order.

 6.     The parties are ordered to complete all discovery, including experts, on or before July 1, 2011.

 7.     The provisions of F. R. Civ. P. 26(b)(4) shall apply to all discovery relating to experts and their opinions. Experts may be fully prepared to be examined on all subjects and opinions included in the designation. Failure to comply will result in the imposition of sanctions.

 8.     The parties have agreed to limit the number of sets of requests for production propounded by each party to three

sets, but otherwise the parties do not propose further changes in the limits on discovery imposed by the Federal Rules of Civil Procedure. The parties do not anticipate the need to take discovery outside of the United States, nor do the parties anticipate utilizing video and/or sound recording of depositions. The parties will negotiate and agree upon an appropriate protective order for the discovery materials that will be produced and exchanged in this case.

X.   Pre-Trial Motion Schedule.

   1.   All Non-Dispositive Pre-Trial Motions, including any discovery motions, will be filed on or before July 20, 2011, and heard on August 26, 2011, at 9:00 a.m. before Magistrate Judge Gary S. Austin in Courtroom 10.

   2.   In scheduling such motions, the Magistrate Judge may grant applications for an order shortening time pursuant to Local Rule 142(d). However, if counsel does not obtain an order shortening time, the notice of motion must comply with Local Rule 251.

   3.   All Dispositive Pre-Trial Motions are to be filed no later than August 1, 2011, and will be heard on September 26, 2011, at 10:00 a.m. before the Honorable Oliver W. Wanger, United States District Judge, in Courtroom 3, 7th Floor. In scheduling such motions, counsel shall comply with Local Rule 230.

XI.   Pre-Trial Conference Date.

   1.   October 31, 2011, at 11:00 a.m. in Courtroom 3, 7th Floor, before the Honorable Oliver W. Wanger, United States District Judge.

    2.    The parties are ordered to file a Joint Pre-Trial Statement pursuant to Local Rule 281(a)(2).

    3.    Counsel's attention is directed to Rules 281 and 282 of the Local Rules of Practice for the Eastern District of California, as to the obligations of counsel in preparing for the pre-trial conference.  The Court will insist upon strict compliance with those rules.

## XII. Motions - Hard Copy.

    1.    The parties shall submit one (1) courtesy paper copy to the Court of any motions filed.  Exhibits shall be marked with <u>protruding numbered or lettered tabs</u> so that the Court can easily identify such exhibits.

## XIII.  Trial Date.

    1.    December 13, 2011, at the hour of 9:00 a.m. in Courtroom 3, 7th Floor, before the Honorable Oliver W. Wanger, United States District Judge.

    2.    This is a non-jury trial.

    3.    Counsels' Estimate Of Trial Time:

        a.    Three days.

    4.    Counsels' attention is directed to Local Rules of Practice for the Eastern District of California, Rule 285.

## XIV. Settlement Conference.

    1.    A Settlement Conference is scheduled for July 5, 2011, at 10:00 a.m. in Courtroom 10 before the Honorable Gary S. Austin, United States Magistrate Judge.

    2.    Unless otherwise permitted in advance by the Court, the attorneys who will try the case shall appear at the Settlement Conference with the parties and the person or persons

17

having full authority to negotiate and settle the case on any terms at the conference.

3. Permission for a party [not attorney] to attend by telephone may be granted upon request, by letter, with a copy to the other parties, if the party [not attorney] lives and works outside the Eastern District of California, and attendance in person would constitute a hardship. If telephone attendance is allowed, the party must be immediately available throughout the conference until excused regardless of time zone differences. Any other special arrangements desired in cases where settlement authority rests with a governing body, shall also be proposed in advance by letter copied to all other parties.

4. Confidential Settlement Conference Statement. At least five (5) days prior to the Settlement Conference the parties shall submit, directly to the Magistrate Judge's chambers, a confidential settlement conference statement. The statement should not be filed with the Clerk of the Court nor served on any other party. Each statement shall be clearly marked "confidential" with the date and time of the Settlement Conference indicated prominently thereon. Counsel are urged to request the return of their statements if settlement is not achieved and if such a request is not made the Court will dispose of the statement.

5. The Confidential Settlement Conference Statement shall include the following:

    a. A brief statement of the facts of the case.

    b. A brief statement of the claims and

defenses, i.e., statutory or other grounds upon which the claims are founded; a forthright evaluation of the parties' likelihood of prevailing on the claims and defenses; and a description of the major issues in dispute.

   c. A summary of the proceedings to date.

   d. An estimate of the cost and time to be expended for further discovery, pre-trial and trial.

   e. The relief sought.

   f. The parties' position on settlement, including present demands and offers and a history of past settlement discussions, offers and demands.

XV. Request For Bifurcation, Appointment Of Special Master, Or Other Techniques To Shorten Trial.

 A. Stipulation to Consolidated Discovery: The parties agree that discovery may be consolidated with discovery in the related case *Pac-West Telecomm, Inc. v. AT&T Communications California, Inc.*, 1:10-cv-0968 OWW GSA. The parties further agree that discovery taken in each of the cases may be used reciprocally in the other case without the necessity for motion or other Court order.

 B. The parties do not suggest bifurcation or phasing, but reserve the right to determine whether a consolidated presentation of the Plaintiff's evidence, or any other party's evidence, would serve the interests of the parties and justice.

XVI. Related Matters Pending.

 1. *Pac-West Telecomm, Inc. v. AT&T Communications of California, Inc.*, 1:10-cv-0968 OWW GSA.

*///*

**XVII.     Compliance With Federal Procedure.**

　　1.    The Court requires compliance with the Federal Rules of Civil Procedure and the Local Rules of Practice for the Eastern District of California.  To aid the court in the efficient administration of this case, all counsel are directed to familiarize themselves with the Federal Rules of Civil Procedure and the Local Rules of Practice of the Eastern District of California, and keep abreast of any amendments thereto.

**XVIII.    Effect Of This Order.**

　　1.    The foregoing order represents the best estimate of the court and counsel as to the agenda most suitable to bring this case to resolution.  The trial date reserved is specifically reserved for this case.  If the parties determine at any time that the schedule outlined in this order cannot be met, counsel are ordered to notify the court immediately of that fact so that adjustments may be made, either by stipulation or by subsequent scheduling conference.

　　2.    Stipulations extending the deadlines contained herein will not be considered unless they are accompanied by affidavits or declarations, and where appropriate attached exhibits, which establish good cause for granting the relief requested.

　　3.    Failure to comply with this order may result in the imposition of sanctions.

IT IS SO ORDERED.

**Dated:    October 8, 2010**　　　　　　　 /s/ Oliver W. Wanger
　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE