**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **PAC-WEST TELECOMM, INC.,** | 1:10-cv-01051 OWW GSA |
| Plaintiff, | MEMORANDUM DECISION AND ORDER RE PLAINTIFF'S MOTION FOR PRIMARY JURISDICTION REFERRAL AND STAY PENDING FCC RULING. |
| v. | |
| **MCI COMMUNICATIONS SERVICES, INC. d/b/a VERIZON BUSINESS SERVICES,** | (DOC. 32) |
| Defendant. | |

## I. INTRODUCTION

Before the court is Plaintiff Pac-West Telecomm, Inc.'s ("Plaintiff") Motion for Primary Jurisdiction Referral and Stay Pending FCC Ruling. Doc. 32. Defendant MCI Communications Services, Inc. d/b/a Verizon Business Services ("Defendant") filed an Opposition (Doc. 45), to which Plaintiff replied (Doc. 46).

## II. FACTUAL BACKGROUND

Plaintiff is a competitive local exchange carrier that provides (1) interstate and intrastate exchange access service, and (2) local, long-distance and enhanced services on a wholesale basis to communication service providers. Doc. 17, ¶ 4. Defendant is an interexchange carrier, i.e., a long-distance carrier, that provides interstate and intrastate interexchange services. Doc. 8, ¶ 74.

Plaintiff filed a Complaint against Defendant June 10, 2010

(Doc. 1) and a First Amended Complaint ("FAC") on July 27, 2010 asserting five claims for relief: (1) collection action pursuant to federal tariff, (2) 47 U.S.C. § 206 - violation of 47 U.S.C. § 201, (3) collection action pursuant to state tariffs, (4) quantum meruit, and (5) declaratory judgment. Doc. 17. Plaintiff alleges that it provides interstate exchange access under federal tariffs that are valid, fully compliant with legal requirements, and filed with the Federal Communications Commission ("FCC"). Doc. 17, ¶¶ 23-26. Plaintiff alleges that it allowed Defendant to utilize its network to originate calls, but Defendant has refused to pay Plaintiff's tariff rates. Doc. 17, ¶ 2.

Defendant filed an Answer to Complaint and Counterclaim on July 6, 2010 seeking relief from Plaintiff's alleged persistent billing and past collection of unlawful charges allegedly authorized by its tariffs. Doc. 8, ¶ 73. Defendant alleges that it does not owe Plaintiff the disputed amounts because: (1) the invoices contain a significant amount for charges associated with central offices that Plaintiff does not own (Doc. 8, ¶ 105); (2) Plaintiff's tariff was void on its face because, at least before the June 2010 amendment, (i) it was missing an essential element, i.e., the rate for a tariffed service, in violation of 47 C.F.R. § 61.2(a) (Doc. 8, ¶ 89), and (ii) it referenced other tariffs in violation of 47 C.F.R. § 61.74 (Doc. 8, ¶ 90); (3) Plaintiff was not permitted to charge Defendant its tariffed rates for calls

2

initiated or received by entities, including voice over Internal protocol ("VoIP"), that are not Plaintiff's end-user customers (Doc. 8, ¶¶ 119-124); (4) Plaintiff regularly billed Defendant at rates exceeding the legal maximum rate (Doc. 8, ¶¶ 126-127); (5) Plaintiff billed Defendant for work not performed (*Id.*); and (6) Plaintiff charged Defendant intrastate rates for interstate traffic (Doc. 8, ¶ 131).

### III. LEGAL STANDARD

Primary jurisdiction "is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decision making responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002). The primary jurisdiction doctrine may apply where "a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). "The doctrine does not require that all claims within an agency's purview be decided by the agency." *Brown v. MCI Worldcom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002). "Nor is it intended to 'secure expert advice' for the courts from regulatory agencies every time a court is presented with an issue

3

conceivably within the agency's ambit." *Id.* (quoting *U.S. v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1365 (9th Cir. 1987). It is appropriate where a case presents "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek*, 307 F.3d at 781.

### IV.  ANALYSIS

Prudential considerations of the primary jurisdiction doctrine applicable to this case make it appropriate to refer this case to the FCC.

First, the Ninth Circuit recognizes that "the primary jurisdiction doctrine is designed to protect agencies possessing 'quasi-legislative powers' and that are 'actively involved in the administration of regulatory statutes.'" *Clark*, 523 F.3d at 1115 (quoting *Gen. Dynamics*, 828 F.2d at 1365). "Charged with the administration of the Telecommunications and Federal Communications Acts, the FCC is such an agency." *Clark*, 523 F.3d at 1115. Here, the FCC is considering the VoIP rules.

Second, the "central focus of the primary jurisdiction doctrine" is "the desirability of uniform determination and administration of federal policy embodied in the agency's

orders." *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1089 (9th Cir. 2006). This case presents the question of whether Plaintiff is entitled to charge tariffed rates for VoIP traffic. On February 9, 2011, the FCC issued a Notice of Proposed Rulemaking that states its intent to clarify this issue:

> [W]e seek comment on the appropriate intercarrier compensation framework for voice over Internet protocol (VoIP) traffic. The Commission has never addressed whether interconnected VoIP is subject to intercarrier compensation rules and, if so, the applicable rate for such traffic. There is mounting evidence that this lack of clarity has not only led to billing disputes and litigation, but may also be deterring innovation and introduction of new IP services to consumers.

F.C.C. Notice of Proposed Rulemaking and Further Notice of Proposed Rulemaking, 2011 WL 466775, * 157 (February 9, 2011). The Ninth Circuit has stated that the FCC's "development of a uniform regulatory framework to confront this emerging technology [i.e., VoIP] is important to federal telecommunications policy." *Clark*, 523 F.3d at 1115. Invoking the primary jurisdiction doctrine would facilitate uniformity of administration.

Third, this case requires resolution of highly technical telecommunications "issue[s] within the special competence of an administrative agency." *N. Cnty. Commc'ns Corp. v. Cal. Catalog & Tech.*, 594 F.3d 1149, 1155-1156 (9th Cir. 2010) (quoting *W. Radio Servs. Co. v. Qwest Corp.*, 530 F.3d 1186, 1200 (9th Cir. 2008)). Defendant contends that the issues in this case are no more complex than those posed in any contract case and can be resolved

5

through a fact-specific inquiry into Plaintiff's tariffs and FCC rules and regulations. However, opining on the compensation of VoIP technology, calculating and allocating tariff rates, and interpreting technical terms such as "end user," "customer," and "carrier" require the expertise of the FCC. *See U.S. v. W. Pac. R.R. Co.*, 352 U.S. 59, 66 (1956) ("[W]here words in a tariff are used in a peculiar or technical sense, and where extrinsic evidence is necessary to determine their meaning or proper application, so that the inquiry is essentially one of fact and of discretion in technical matters, then the issue of tariff application must first go to the Commission.") (internal quotations omitted); *AT&T Corp. v. Bus. Telecom, Inc.*, 16 F.C.C.R. 12312, 12325 (2001) ("In fact, courts are 'particularly deferential' when reviewing the Commission's evaluation of rates, because such agency action is far from an exact science and involves 'policy determinations in which the agency is acknowledged to have expertise.'").

Fourth, "[u]nder the filed-rate doctrine, no one may bring a judicial challenge to the validity of a filed tariff. As a corollary, no one may bring a judicial proceeding to enforce any rate other than the rate established by the filed tariff." *Brown*, 277 F.3d at 1171. In its counterclaim, Defendant alleges that it does not owe Plaintiff the disputed amounts in part because Plaintiff's federal tariff is void on its face. Doc. 8, ¶ 142.

While a district court can interpret the terms of a tariff, a challenge to a federal tariff's validity must be brought to the FCC. *See Brown*, 277 F.3d at 1171-1172 ("The filed-rate doctrine precludes courts from deciding whether a tariff is reasonable, reserving the evaluation of tariffs to the FCC, but it does not preclude courts from interpreting the provisions of a tariff and enforcing that tariff.").

"In sum, this case requires the resolution of an issue within the jurisdiction of an administrative body exercising statutory and comprehensive regulatory authority over a national activity that requires expertise and uniformity in administration." *Syntec*, 307 F.3d at 782. Under these circumstances, the application of the primary jurisdiction doctrine is appropriate, and the matter is referred to the FCC. *See id.*

Where a court defers to an administrative agency under the primary jurisdiction doctrine, the court "has discretion either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice." *Reiter v. Cooper*, 507 U.S. 258, 268-69, 113 S.Ct. 1213 (1993). Here, the statute of limitations may prevent Plaintiff from refiling its claim at the conclusion of its proceedings with the FCC. *See Syntek*, 307 F.3d at 782. "Also, where the court suspends proceedings to give preliminary deference to an administrative

7

agency but further judicial proceedings are contemplated, then jurisdiction should ordinarily be retained via a stay of proceedings, not relinquished via a dismissal." *Davel Commc'ns*, 460 F.3d at 1091. Defendant agrees that any FCC decision would leave key issues unresolved (Doc. 45, 17), and further judicial proceedings may be necessary to resolve the claims for the unpaid tariffs after the FCC's disposition. *See U.S. Telepacific Corp. v. Tel-Amer. of Salt Lake City, Inc.*, 19 F.C.C.R. 24552, 24555 (2004) ("[L]ong-standing Commission precedent holds that 'under sections 206-209 of the Act, the Commission does not act as a collection agent for carriers with respect to unpaid tariff charges, and that such claims should be filed in the appropriate state or federal courts.'"). The proceedings are STAYED pending the outcome of the FCC administrative process.

Plaintiff asks the court to direct the FCC to decide the issues on a timely basis, not to exceed six months. Plaintiff, however, does not cite any authority that vests this authority in district courts. There is no formal transfer mechanism between the courts and the FCC, and the parties are responsible for initiating administrative proceedings and pursuing administrative remedies themselves. *Clark*, 523 F.3d at 1115.

Defendant does not oppose extending the dispositive motion filing deadline by six months; however, it does oppose extending the discovery deadlines by six months. Plaintiff contends that a

8

**referral to the FCC will reduce the unresolved issues in this case and narrow the scope of discovery. Efficiency requires staying this case, including discovery, for six months in light of the 2011 NPRM; however, the stay shall not affect outstanding discovery requests, which must be resolved.**

**It is recognized that the court lacks jurisdiction to order the FCC to hear or decide Plaintiff's claims. The state claims are incidentally affected by FCC review. Discovery shall continue as to state claims unless amounts claimed to be owed will be entirely decided by FCC review.**

## V.     CONCLUSION

**For the reasons stated:**

1. **Plaintiff's Motion for Primary Jurisdiction Referral and Stay Pending FCC Ruling is GRANTED. This case is STAYED for six months. This shall include the entire case schedule and trial date.**

2. **Plaintiff shall immediately initiate administrative proceedings before the FCC to address the tariff and billing dispute.**

3. **Plaintiff shall submit a proposed form of Order consistent with this Memorandum Decision within five days of electronic service of this memorandum decision.**

4. **The parties shall submit a status report within 120 days to inform the court of the progress of the administrative**

1    proceedings before the FCC.
2  SO ORDERED.
3  DATED: March 22, 2011.
4                                         /s/ Oliver W. Wanger
                                          Oliver W. Wanger
5                                         United States District Judge